UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILMA HENRY,

    Plaintiff,

v.                                  Case No.:  8:09-cv-11-T-33EAJ

UNIVERSITY OF SOUTH FLORIDA
BOARD OF TRUSTEES, JUDY
GENSHAFT, and KOFI GLOVER, in
their individual and official
capacities,

    Defendants.
_____/

**<u>ORDER</u>**

This cause is before the Court pursuant to Defendants' Motion to Partially Dismiss Plaintiff's Second Amended Complaint (the "Motion" Doc. # 32), filed on May 26, 2009. Plaintiff filed a Response in Opposition to the Motion on June 1, 2009. (Doc. # 35). For the reasons that follow, the Motion is due to be denied.

## I. <u>Factual Background and Procedural History</u>

The following factual discussion, taken from Plaintiff's Second Amended Complaint (Doc. # 28), is accepted as true for the purpose of addressing the Motion. Plaintiff, Wilma Henry, is an African American female. (Doc. # 28 at ¶ 12). In 1994, USF hired Henry for the position of Visiting Associate Professor. (Doc. # 28 at ¶ 13). Thereafter, Henry was appointed to serve as the Associate Vice President for Student

Life and Wellness, a twelve-month contract administrative position. (Doc. # 28 at ¶ 14). In 2004, Henry was appointed to the position of Associate Director of Educational Training Programs in the Division of Student Affairs. (Doc. # 28 at ¶ 16).

Until August 2007, Henry was under a twelve-month administrative faculty contract with a salary of $144,056. (Doc. # 28 at ¶ 18). However, on August 14, 2008, Henry received "a new nine-month faculty contract offer of $65,000." (Doc. # 28 at ¶ 18). Henry contends that the new contract paid less than required by a binding Collective Bargaining Agreement. (Doc. # 28 at ¶ 19).

Henry contends that "[s]imilarly-situated male and/or non-African American administrators who transitioned from twelve-month administrative appointments to nine-month full-time faculty appointments received [a salary] in compliance with the CBA." (Doc. # 28 at ¶ 21).

In addition, Henry contends that, unlike males and/or non-African Americans, she did not receive "the privilege of a year of professional development leave prior to beginning [her] faculty assignments when transitioning from a twelve-month administrative appointment to a nine-month faculty contract." (Doc. # 28 at ¶ 28).

On August 16, 2007, Henry filed a charge of discrimination with the EEOC. (Doc. # 28 at ¶ 11; Doc. # 32-2). In her charge, Henry checked the boxes for "race" and "sex" discrimination; however, she did not check the box for "national origin" discrimination. (Doc. # 32-2). In her "statement of discrimination" Henry explained, "I believe I have been discriminated against because of my sex, female and race, African American, in violation of Title VII of the Civil Rights Act of 1964, as amended." (Doc. # 32-2).[1]

Henry received a Right to Sue Letter from the EEOC. (Doc. # 28 at ¶ 11). On November 20, 2008, Henry filed suit against the Defendants, USF, Judy Genshaft and Kofi Glover, in State Court. (Doc. # 2). On January 6, 2009, the Defendants removed the case to this Court on the basis of federal question jurisdiction, 28 U.S.C. § 1331. (Doc. # 1). Henry

---

[1] Documents referenced in a complaint that are central to the claim asserted may be considered if the contents are not in dispute and the defendant attaches the document to a motion to dismiss. Financial Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007). The Court finds that Henry's charge of discrimination, which is specifically mentioned in the Second Amended Complaint, meets these requirements and that the Court's consideration of the charge of discrimination does not convert the Motion into a motion for summary judgment. See, e.g., Darby v. S.B. Ballard Constr. Co., 3:05-cv-199-J-32MCR, 2005 U.S. Dist. LEXIS 42011, at *1 n.1 (Aug. 26, 2005)(consideration of an EEOC charge of discrimination referenced in the complaint did not convert the motion to dismiss into a motion for summary judgment).

filed an Amended Complaint on March 9, 2009, and thereafter, a Second Amended Complaint. (Doc. ## 12, 28).

In the Second Amended Complaint, Henry asserts the following claims: disparate treatment gender discrimination in violation of the Florida Civil Rights Act ("FCRA") against USF (Count I), disparate treatment gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") against USF (Count II), disparate treatment race discrimination in violation of the FCRA against USF (Count III), disparate treatment race discrimination in violation of Title VII against USF (Count IV), disparate treatment national origin discrimination in violation of the FCRA against USF (Count V), disparate treatment national origin discrimination in violation of Title VII against USF (Count VI), disparate treatment race and/or color and/or alienage discrimination in violation of Section 1981 brought via Section 1983 against Judy Genshaft in her official capacity (Count VII), disparate treatment race and/or color and/or alienage discrimination in violation of Section 1981 brought via Section 1983 against Kofi Glover in his official capacity (Count VIII), disparate treatment race and/or color and/or alienage discrimination in violation of Section 1981 brought via Section 1983 against Judy Genshaft in her individual capacity (Count IX), and

4

disparate treatment race and/or color and/or alienage discrimination in violation of Section 1981 brought via Section 1983 against Kofi Glover in his individual capacity (Count X). (Doc. # 28).[2]

On May 26, 2009, the Defendants filed an Answer to the Second Amended Complaint along with affirmative defenses. (Doc. # 31). Thereafter, the Defendants filed the Motion, seeking dismissal of Henry's "national origin" discrimination claims as well as partial dismissal of Henry's "official capacity" claims against USF employees Genshaft and Glover. The Motion is ripe for the Court's review.

## II. **Legal Standard**

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990)

---

[2] "Claims brought under the FCRA are analyzed under the same framework as those brought under Title VII." Selby v. Tyco Healthcare Group, L.P., 301 F. App'x 908, 911 (11 Cir. 2008).

("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.")

However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

## III. **Analysis**

At the outset, the Court notes that both parties have advanced a number of premature factual arguments in the Motion. For instance, the parties comment on the statute of limitations for bringing an EEOC charge, whether Henry was assisted by counsel when she filed her charge with the EEOC, Henry's intentions for the EEOC charge, and Henry's place of national origin--issues that are neither discussed in the Second Amended Complaint nor the EEOC charge. In deciding the Motion, the Court will review only the Second Amended Complaint and the EEOC charge. The Court will not delve into

6

disputed issues of material fact or other issues best resolved at the summary judgment stage.

   **A.   <u>National Origin Discrimination</u>**

Henry's Second Amended Complaint contains discrimination claims regarding her national origin (Counts V and VI).  The Defendants contend that the national origin discrimination claims should be dismissed due to failure to exhaust administrative remedies because Henry did not check the box for "national origin" discrimination on the EEOC charge.  The Defendants contend that "Plaintiff's statement in her charge that she was discriminated against based on her race–"African American," without more, is not enough to place USF on notice that Plaintiff intended to pursue a claim for national origin discrimination." (Doc. # 32 at 13).

A number of courts have addressed the issue of whether a claim is administratively barred because it was not described in the EEOC charge of discrimination.  The Eleventh Circuit's decision in <u>Gregory v. Ga. Dep't of Human Resources</u>, 355 F.3d 1277 (11th Cir. 2004) is particularly helpful.  There, Gregory, an African American female, was terminated from her position as a staff psychiatrist. <u>Id.</u> at 1278.  She believed that she was the victim of discrimination and filed a charge with the EEOC.  She prepared her charge without the assistance

of an attorney, and she checked the boxes on the charge for "race" and "gender" discrimination. Id. at 1278-80. She left the box marked "retaliation" un-checked. Id.

In her explanation section, Gregory remarked, among other things, that she was fired for "no legitimate reason," that she believed that she was discriminated against, that she was an exemplary employee, and concluded that "I believe that I have been discriminated against on the basis of my race (Black American) and my sex (female)." Id. at 1279.

Thereafter, Gregory filed a complaint against the defendant which included a retaliation count. The defendant moved for summary judgment on the retaliation claim, arguing that such claim was "administratively barred" because Gregory failed to check the box marked "retaliation" on the EEOC charge. Id. at 1278. The district court denied the motion for summary judgment. Id. The case proceeded to trial and a jury reached a verdict in Gregory's favor on her retaliation claim. Id.

On appeal, the Eleventh Circuit entered an order to address "whether summary judgment should have been entered for the defendant employer on plaintiff's retaliation claim on the ground that the claim was administratively barred because it

was not specifically articulated in plaintiff's charge previously filed with the [EEOC]." Id. at 1278.

The Eleventh Circuit affirmed the district court as follows:

> After a careful de novo reading of Dr. Gregory's EEOC charge prepared without the assistance of counsel, and under the liberal EEOC charge strictures of Sanchez, we hold that the district court did not err in finding that Dr. Gregory's retaliation claim was not administratively barred by her failure to mark the retaliation space on the EEOC template form.[3] The facts alleged in her EEOC charge could have reasonably been extended to encompass a claim for retaliation because they were inextricably intertwined with her complaints of race and sex discrimination.

Gregory, 355 F.3d at 1280.

After Gregory, it is clear that the Court cannot dismiss Henry's national origin discrimination claim simply because

---

[3] In Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970), the court ruled that "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id. at 466. The court further explained that "a charge of discrimination is *not* filed as a preliminary to a lawsuit. On the contrary, the purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC. Once a charge has been filed, the Commission carries out its investigatory function and attempts to obtain voluntary compliance with the law. Only if the EEOC *fails* to achieve voluntary compliance will the matter ever become the subject of court action. . . . [I]t is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id. (emphasis in original).

9

Henry failed to check the "national origin" discrimination box on the EEOC charge. Instead, the Court must determine whether what Henry did note on the EEOC charge would lead the EEOC to investigate national origin discrimination.

After due consideration, the Court declines to dismiss the national origin discrimination claims at this juncture. Just as the Eleventh Circuit determined that Gregory's sex and race discrimination claims were "inextricably intertwined" with her retaliation claims, the Court here finds that Henry's race and national origin claims may be inextricably intertwined. See Bullard v. OMI Ga, Inc., 640 F.2d 632, 634 (5th Cir. 1981)("[W]hen dealing with employment discrimination cases . . . 'national origin' discrimination is so closely related to racial discrimination as to be indiscernable. . . The line between national origin discrimination and racial discrimination is an extremely difficult one to trace").

Henry argues that by "using the term 'African American' as opposed to 'black,' her charge encompasses both race and national origin discrimination." (Doc. # 35 at 4).

The Defendants, on the other hand, argue that Henry was required to designate her country of origin on the charge of discrimination, or at least in the complaint, in order to bring a national origin discrimination claim. In addition,

the Defendants contend that "Africa" is a continent, not a country, and therefore, Henry's national origin discrimination claims fail, even under the theory that Henry used the term "African American" to encompass Africa as her place of origin.

In support of these arguments, the Defendants rely on Graham v. Wal-Mart Stores, Inc., 5:05-cv-517-OC-10GRJ, 2006 U.S. Dist. LEXIS 78021 (M.D. Fla. Oct. 24, 2006). In Graham, the plaintiff filed a charge of discrimination with the EEOC in which he checked the boxes for "race" discrimination and "retaliation" only. Id at *2. In his explanatory paragraph, he stated: "I believe that I have been discriminated against because of my race, Black" and that "White employees received favorable treatment." Id. at * 5. Thereafter, the plaintiff filed a pro se complaint alleging claims of race, color, gender, religion, and national origin discrimination as well as retaliation. Id. at * 1.

Wal-Mart Stores moved to dismiss all claims except for race and retaliation because race and retaliation were the only boxes checked on the EEOC charge. Id. The plaintiff did not file a response to Wal-Mart Stores' motion to dismiss. Id. The district court granted the motion to dismiss in part. Id. at *5. The district court dismissed the gender, religion, and national origin discrimination claims, but declined to dismiss

11

the color discrimination claims, reasoning that gender, religion, and national origin were not mentioned in the EEOC charge and "there is no evidence that those claims could reasonably be expected to grow out of his charge of discrimination." Id. However, of significance to the present case, the district court in Graham stated that "had Plaintiff used the terms 'African American' and 'Caucasian' rather than 'Black' and 'White' the Court may have reached a different conclusion." Id.

On the present Motion, the Court accepts as true all the allegations in the complaint and construes them in the light most favorable to Henry. Henry described herself as "African American" and alleges in the complaint, among other things, that she was treated less favorably than similarly situated non-African American employees. (Doc. # 28 at ¶¶ 12, 19-29, 54-60). She alleges that her national origin was a motivating factor for adverse action against her by her employer. (Doc. # 28 at ¶¶ 54, 59).

On a motion to dismiss, the Court concludes that Henry's allegations are sufficient to support a national origin discrimination claim. This is especially appropriate because in response to the Motion, Henry indicates that "African American" "denotes her race as well as her national origin."

(Doc. # 35 at 14). The Court will revisit this issue, if necessary, during the summary judgment stage of the case where evidence and further argument may be considered.

B. **Official Capacity Claims**

Count VII is entitled "Disparate Treatment Race and/or Color and/or Alienage Discrimination in Violation of Section 1981 brought via Section 1983 Against Genshaft in her Official Capacity." (Doc. # 28 at 12). Likewise, Count VIII is entitled "Disparate Treatment Race and/or Color and/or Alienage Discrimination in Violation of Section 1981 brought via Section 1983 Against Glover in his Official Capacity." (Doc. # 28 at 14).[4]

In her Second Amended Complaint, Henry requests an order restraining Genshaft and Glover "from enforcing and/or not correcting the decision to inequitably reduce Henry's salary" requiring Genshaft and Glover "to increase Henry's salary" and "permanently enjoining" Genshaft and Glover from future violations of Section 1981. (Doc. # 28 at 14–15).

---

[4] These official capacity counts against Genshaft and Glover are asserted in addition to individual capacity counts against Genshaft (Count IX) and Glover (Count X).

The Defendants seek an order dismissing either Count VII or VIII, arguing that "Plaintiff's Second Amended Complaint is in no way increased or enhanced by suing both Genshaft and Glover in their official capacities." (Doc. # 32 at 15). The Defendants explain, "because Plaintiff's Section 1981 and 1983 official capacity claims against Genshaft and Glover are each the functional equivalent of Section 1981 and 1983 claims against USF, suing both Genshaft and Glover in their official capacities is duplicative and redundant." (Doc. # 32 at 14).

Henry is able to refute the Defendants' arguments on this issue. Henry correctly notes that when an "official capacity claim seeks prospective relief against the officials rather than monetary relief against the state entity itself, the claims are not the same as a suit against the government entity." (Doc. # 35 at 17). Henry's argument is well-supported by binding case law. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 n.10 (1989)("official-capacity actions for prospective relief are not treated as actions against the State"). In Counts VII and VIII, Henry seeks prospective relief, including a salary increase from Genshaft and Glover, rather than monetary damages.[5] The Court declines

---

[5] The Court is also convinced by Henry's argument that "the parties have not yet engaged in discovery much less presented all the evidence to this Court or the jury regarding the involvement and motives of Genshaft and Glover. . . .

to dismiss the official capacity claim against either Genshaft or Glover at this stage of the proceedings.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

The Defendants' Motion to Partially Dismiss Plaintiff's Second Amended Complaint (Doc. # 32) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 10th day of December 2009.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record

---

Ultimately, a jury may find any number of different determinations against one or both of them on different grounds." (Doc. # 35 at 18). The Defendants' request for dismissal of either Count VII or VIII is presented prematurely.